May it please this honorable court, and it is an honor to appear before this court, I'd like to describe to you two roads that this court might take, but unlike the parable of the broad road and the narrow road, both of these roads will lead to the same conclusion. The first road would be to take on the issue of whether mere exposure or actual injury in fact is required to trigger a CGL policy in this kind of bodily injury case. And as the court knows in ASRAC, you all made an eerie estimation that exposure would do, but the Texas Supreme Court poured some cold water on that, if you will, in the Don's Building Supply case, but left open the issue as to whether exposure or injury in fact was the right test in a bodily injury case. Counsel, I would think that the injury was when the insured had to pay one of those tremendous amounts to settle the case. I don't know injury or exposure by the employee who had mesothelioma. I don't know what injury and exposure has got to do with a cold recess, excess insurer is out. Well, both of the primary and excess policies require that there be an occurrence, which requires that there be injury during the time. If they were injured, they had to pay a judgment. Right, but these payments were made long after. If we only trigger the policies that were in effect when the payment was made, my client would be out of this altogether. So you can go back to the case by the injured employee or the man that has asbestosis and question the Texas law as to what would be adequate proof. It wouldn't be just that he was around where he breathed those asbestos in the gasket, but you had to prove actually that it injured his lungs. Are you going under the line and talking about the claim of the injured employee? Yes, there has to be proof that he was injured in fact. And the reason for that is that the science tells us every one of us has thousands of asbestos fibers in our body. And you don't get sick from the first breathing of it, you get sick after a while of exposure. And it's not exactly clear, but what Trinity did in the first place, their first attempt at this, according to their own claims adjuster, they allocated this over all five of their policies, which is $2.5 million worth of coverage, and they paid $2.4 million. So they were only barely about to exhaust those. They changed their mind when they got into this litigation and tried to stack it all in one policy and spike up to my claim. And those are the complicated questions down that first road that we're talking about because you'd have to, you might want to certify that to the Texas Supreme Court if you decide exposure. I don't want to go back 60 years to the Texas law of how you prove an asbestos claim. Well, it's not so much about how you prove the asbestos claim. And now, by the way, you have to be sick to even file a claim in Texas. They changed that in 2005. So, you know, this is talking about some claims that preceded that. And it's not what the injured person has to prove, but it's what insurance applies. Most of these companies have insurance for every year. It's just a matter of picking which year. You're attacking what you're insured pays. Well, we are. Well, we're the excess. We're attacking what the primary pay. Not really. If they want to exhaust their policy even when they didn't need to pay it, that's fine. But when you come to our policy, we still have a requirement that they be injured, the person be injured during our policy. Oh, they were injured today to the tune of millions of dollars. Well, that's Trinity that was injured. And LSG or LGS, rather, the insured has been settled out. They have no further complaint with us in this case. And so they've been taken care of. This is just a matter of how we allocate between the primary policies, which ordinarily you would think would go first, and the excess policies, which we have. That's your first point, and that point really interests me. Well, the first point is not only the trigger. And really, if you read Don's building supplies, I know you have, in one of the footnotes, I think it's 35, they talk about this court's decision in ASROC. And they say ASROC determined that exposure was going to be the trigger in a personal injury case. And then they cite another case that says the opposite. And Don's building supply says it's injury in fact. That's the same policy language, the same occurrence language. And they leave it open. It's almost as if they've sent you an invitation. The next time you get one of these cases that involves personal injury, send it over there. And, of course, the reason is this court can determine what it thinks Texas law is, but it's not binding on anybody but the federal district courts that sit under you. And rather than take them down that road, I think it would be a good case to certify it to the Texas Supreme Court. They've been very open to certifications. But you haven't made a point with one judge yet. Well, let's talk about the question. But I am still concerned about your first point. All right. Well, you know, I'm probably not going to convince you on exposure versus injury in fact. You aren't. All right. Well, then may I go on to another point? Wish you would. Maybe the narrow road is the way to go. Let's talk about the narrow road. The pollution exclusion is an issue about which Texas law is clear and so is this circuit. A few years ago you decided, although in an unpublished opinion, that silica was a pollutant and that the claims for silica exposure were barred or were excluded under the policy because of the pollution exclusion. This policy has a clear pollution exclusion. And what is it about asbestos that you could possibly say it's not a pollutant? Pollutant includes an irritant. It's only because, as Your Honor knows, the asbestos gets into the lungs and irritates them that causes the cancer, that causes the meso. And that is exactly what we have here. Trinity has said, well, you didn't attach all the underlying lawsuits. They're all in the record. Whether we attached them or they attached them, the district court had before it all of the underlying cases. And there's not any question that this case is about asbestos exposure. And they say, well, it's got to escape into the air. Before these men, and they were mostly men, breathed it, it obviously had to escape into the air. They're not consuming these gaskets. And so then you have Trinity's attempt at a sudden and accidental exclusion. And what they talk about is almost hilarious. They've got three workers that say once in a while the crane would bump into the wall of one of these buildings. We don't know if that building was one that was using these gaskets or not. And dust would fly around. We don't know if that dust was dust from gaskets or any other product that may have contained asbestos in those buildings. And so on a few occasions somebody would run into the side of the building and cause dust to go around. And therefore, you know, the pollution exclusion goes out the window. Do they have the actual facts that it ran into it on this day and this caused it? Is there anything like, you know, the Titanic hit the iceberg on this day and this is, I mean, this is just kind of knowledge in the industry that this happens from time to time. Well, I mean, they were talking about anecdotes, but they were not tying them to a time or a place or who was there on that day that could have been injured by that if that dust had our product in it, which is kind of hard to imagine. And so there's no proof to tie that up. The district court ruled there was a fact issue on that point. Is that what happened? Yes, and that was Judge Folsom a long time ago, and nobody wanted to reconsider it. In fact, for some reason that was considered law of the case, which it certainly isn't. So it's a fact issue. It's not been established that there was some sudden. Right. The Trinity says that at the minimum it's a fact issue. You could remand for a fact issue about sudden and accidental, but when you have just three people that are talking about this, you know, their claims, by the way, these three people are not even on the list that Judge Kendall made of people whose payments triggered our policy. Well, I mean, if we were to determine that asbestos is a pollutant like we determined that silica is a pollutant, isn't that right? Yes. That we remand for determination of whether there is evidence, you know, on the fact issue of sudden and accidental exception, and then that puts a bow on the case. Is that a way to? But you don't like that way. I'm fine with that because they're not going to be able to prove it, I'm convinced. But, you know, if they want a chance to go back down and prove sudden and accidental by enough people to justify getting into our policy, that would be fine. But I think. Because it's not just that they allege that it's sudden and accidental. They have to actually have, they have to prove it was, right? Right. And it is their burden on the exception. And they did not come forward, as Your Honor says, with any attempt to tie that to any time period. Because, you know, if you're going to do the pollution exclusion, I guess you're going to presume that this, without deciding, that the spiking is okay, and you're within our one policy, the 8384 policy. And so. You have to show that the thing rammed into the building during that time period and that it caused some sort of release that would have been enough to have caused the asbestosis or the condition that the people have. Exactly. Based upon that one. So you'd have to have expertise on both points. Well, right. Maybe, I mean, at the very least. Well, first, I don't know how they're going to find somebody that's going to remember that 20-some or 30-some odd years ago was the time when a crane ran into the wall. I think that's going to be pretty much impossible. Right. But, I mean, even that theory that the crane running into the wall is what, is the sudden thing that causes this rather than over, because the cases are legion that it's over the period long-term exposure that causes these conditions in these workers. That's true. Of course, that sort of goes back into a little bit of the first point that I made. But let's not talk about the first point. Let's say it is exposure. Trinity has put in as much proof that all five of their years of policies underlying ours, and, in fact, the next couple of years where they were on top of themselves in terms of excess and primary, they put in proof that you could have picked any one of those years or all of them, as I say, like they did at first. Now, I'm not foreshadowing, but assuming argument of that's what we chose to do, just because we've got so many options here. Right. What happens with all of the fees and the this and that and the other? Does that all get tabled until that issue is resolved? Yes. That nothing could be resolved on those until that's resolved? Right. That has to be, you know, sent back as well because if the pollution exclusion applies, we had no duty to defend or indemnify. And so if there's a sudden and accidental exception that they can prove that says, well, you should have defended these cases, then they can tend to those to us, assuming they can find cases that came after their exhaustion and that were sudden and accidentally caused and so forth. And that's going to be. Go ahead. Sorry. I say that's going to be de minimis. But we'll hear what Mr. Cooper may have to say about. Can you remind us what would be a novel court if we said that? That asbestos is a pollutant? Not at all. We've cited in our brief cases from around the country. There's no Texas case, but there are other cases around the country that have said asbestos is a pollutant, and you would not be the first to do that. Oh, I thought it was red. It's yellow. But unless the court has other questions, we do have a few other arguments that you've seen in our brief. But, you know, one I would like to point out, if we don't get any other relief, the least we ought to be able to do under Garcia is to reallocate according to our subrogation rights. That's what Garcia clearly says, and we ought to be able to do that. We have contractual and equitable subrogation rights that we ought to be able to reallocate. I thank the court for its kind attention. Thank you. Well, Mr. Cooper, Mr. Wright sees your client as being very generous to place claims, and his complaint is primarily that you wasted a lot of your money. The truth is, Your Honor. Is that part of the record? How is that developed in the record? It's developed in the record that in 2000 they were told that Trinity had exhausted and requested to come in there and take over, and for 17 years they have refused to come in to defend, to pay any claims. They actually went to our defense counsel's office, spent two weeks there copying, auditing, and they wouldn't even pay him for his copy costs when he sent them a bill for the copy costs. If they're right in the rules they're asking this court to adopt, then pretty much no insured would ever be able to meet their burden to obtain coverage for asbestos. My company stayed in. They continued to pay under reservation rights. The insured, it wasn't Trinity who selected the 83 to 84 year. It was LSG or LGS. They got it wrong halfway in the case and corrected it, but they were the ones who selected it because it gave them the most coverage, and under the Garcia case from the Supreme Court where it's a continuing injury, as we all know asbestos is when you have exposure and then you have the scarring and then you develop into mesothelioma, that's a continuing injury. The trial judge found it. He had a, I'm sorry, the master judge Kendall found it in his master's report that it is a disease that develops every time you're breathing in these fibers. It's causing injury to your lungs. Then there's scarring. Then there's inflammation, and then eventually it develops into cancer or mesothelioma or something like that. It's a progressive disease. Now, their argument that this court is all wet in Azraq, I would take exception to the court being wet because if you actually look at Don's building supply, the Supreme Court case, the latest and the greatest that we have on this issue, the Supreme Court on page 28 says, again, what some courts call the exposure rule may actually be what others would call the injury in fact rule. That's on page 28 of Don's building, footnote 34 of Don's building. In this case, there may be little practical difference between an actual injury rule and an exposure rule. What the Supreme Court was talking about, depending upon the type of case, for example, asbestos, when you're being exposed, you're being injured. Therefore, whether you call it exposure, as the trial judge, Judge Folsom, the original trial judge did, or injury in fact, it is the same thing when we're talking about asbestos. Their argument that the wrong trigger was applied simply isn't consistent with Don's building and it's not consistent with the etiology of asbestos exposure because, again, every time you breathe in there, when you're out there at the plant and you're breathing this stuff in, you are being injured. Even after you stop breathing it in, and this goes to our cross appeal, you still continue to be injured by the scarring, by the inflammation, there continues to be bodily injury that would trigger the policies. Again, in our cross appeal, we believe that the trial judge sort of gave us too big a haircut with respect to the indemnity because he said you had to be exposed during 83-84 in order to sort of have bodily injury. Well, that's not how asbestos works. If you've been exposed before 83-84 and then you've still got these fibers in your lung, you're continuing to sustain injury. And so we think he may have got a little short with us on that and we've raised that. Now, let's talk if we could. Wait a minute. You're continuing to sustain injury. Your injury can get worse, but the injury occurred at the time of the exposure. Let's look at Garcia. Yeah. Garcia was a medical malpractice case and it involved the prescription drug of Halol. And if you take one Halol to calm you down, that's not going to do anything, but it's the continual taking of Halol by Mr. Cardenas over a three- or four-year period that led to the condition of tardive dyskinesia in that case. And so, again, it was a progressive injury. Here we do have a progressive injury, which continues to get worse and worse. But it's not a new injury. Well, actually what happens is— If you left the place, you couldn't say that you're injured because you're at home and your lungs are getting more scarred. If you have asbestos fibers in your lung, you can go to the National Institute of Health site. They've got a whole deal on asbestos. So what happens is your body continues to react. I'm very familiar with asbestos. Scarring continues to happen. Inflammation continues to happen. And eventually, you can develop mesothelioma, as Judge Riley said, or cancer or something else. But it is a progressive disease. But that's not a new injury. Well, and I guess I want you to move on, but I think you're saying maybe two things. One, you're saying exposure equals injury. Is that what you're saying? We're saying exposure does equal injury in asbestos. And then you're saying that that injury is a continuing injury. Which I believe under the medical literature it is. All right. And we look at their definition. Injury includes disease. All right. So they have agreed that bodily injury, under their policy definition, would include the disease process. So you have the injury. Then later on, you have the disease process, which by their definition, which they wrote, which they're bound by, if there's any ambiguity, the insured, Loma Alta or LSG, gets the benefit of it. And I think Trinity does, as we're stepping into Loma Alta's shoes. If there's ambiguity in their definition of bodily injury, we get the benefit. Did he answer your question? Did I get it just right? Close. Did I sidestep it accidentally? No. Okay. Okay. Did Trinity plead the exception of turning to the pollution exclusion? I'm sorry? Did Trinity plead the exception to the pollution exclusion? It was raised in our summary judgments going back to 2010. It's always been a part of it. However, I don't think we ever get there in this case because they presented no evidence about the applicability of the pollution exclusions. Okay. But I actually don't think you answered my question. Okay. My question was, okay, that's the answer. It was raised in the summary judgments. Okay. It was raised there. And if you go to the pollution exclusion, they're saying, well, we know that it's asbestos and it's inheritant. And therefore, the pollution exclusion applies. That is not the law. Because the way they drafted their pollution exclusion is there must be an escape upon land, the atmosphere, or water, of course. There are cases we've raised in summary judgment, and I believe that if there is pollution, let's say I have one of these gaskets, and I break it open here, and there's a little dust that comes up, that that is not into the atmosphere. That is inside of a building. That the atmosphere means what is outside. Second. The district court didn't accept that argument. The court pretty much seemed to assume arguendo that it could be and then went on. Well, I believe there are other cases that have accepted that argument. Number two, the issue is whether or not the products exception apply. ISO, the Insurance Services Office, which drafts insurance policies, when they file the policy with the pollution exclusion with the Texas Department of Insurance, they file with that various explanatory briefs or whatever that are filed with the regulators. Did you make a products exception defense in the district court? We did. Because they argue you did not. We did. So where is that? I argued it. It was in our brief. We had the reference to the TDI filing. And when we argued with Joe and Judge Folsom's court, it was argued. So, yes, we did. But to the district court, you argued this? We did. Okay. And we referenced, because I can remember calling and getting the information regarding the ISO filing. So we can look at it and see if it's there. But if it is there, how would it apply if the text of the contract doesn't include this exception? You can't just generally rely on common exceptions. You have to actually be in the text. Well, it's the industry's interpretation of what the exclusion was designed to cover. And they tell the TDI, they were submitting these to the TDI to seek their approval. And they're saying, this is how we believe these exclusions should be applied. And that it does not apply to products. For example, if you were or someone was a hairspray manufacturer. And, you know, you're seeing Judge Graveswood, but some others, Judge Hillrider, spray your hair, and you breathe in the hairspray and it causes some problem to your lung from the inhalation of that. Well, if that were true, if they were correct, the hairspray company never, ever would have products liability coverage for their main exposure. That is, breathing in the hairspray and what it would do to your lungs. Because that is why ISO said it's not going to apply to your products. Otherwise, you would never have products liability coverage, where you're involving products that perhaps, you know, you spray into the atmosphere or whatever. Or let's say it's butt spray, raid or something like that. You would never have any coverage because of the pollution exclusion. Why don't you negotiate for that clause? Well, if you're a big enough one, you can. But if you're a small company like Lone Star Gasket and Supply, you don't have the ability. They barely were able to hang on. And if Trinity hadn't been defending and hadn't made these claims, they would be out of business today. Can you, assuming arguendo, that we don't buy these two arguments on, and I'm not foreshadowing by any means, on the pollution exclusion, then what if, is there a fact issue on the sudden? Well, I think the first fact issue is, did they meet their burden? And I think the answer to that is no, because they did not file any evidence. They did not file their burden. What burden do they have? They are the insurer. They have the burden of initially showing the application of an exclusion. Right, but once they come forward and say they have an exclusion because it's a pollutant, then you say, no, we have an exception to that exclusion, and you have to prove the applicability of your exception, which is the sudden and accidental, right? Once they have established the applicability of the exclusion, the burden shifts to the insurer to show the applicability of the exception to the exclusion. That is right. However, on the current record that we have right now, they have never got close to meeting the burden to show the applicability of the exclusion through evidence. And there's two different issues here, Judge Elrod, and you mentioned that earlier. One is the duty to defend, okay, in which case we're limited to the eight corners rule. And the question is, under the eight corners rule, is there evidence in the pleadings that they brought that shows there was a discharge into the atmosphere and blah, blah, blah to satisfy the first part of the exclusion? And I tell you, read through these pleadings, there's not, in which case there would be a duty to defend upon their part. The second issue is the duty to identify, which is not determined by the pleadings, but is determined by the actual facts, the actual evidence. They have brought in zero actual facts or actual evidence in connection with the summary judgment. And so I think with respect to the pleadings, there is none of those allegations about discharge or whatever to satisfy their burden of showing the applicability of the exclusion. And likewise, with respect to the duty to identify, they likewise have failed to come forward with any evidence. And I think the trial court's judgment can be sustained just on their failure to comply with their burden regarding coming forward with evidence. Counsel, both of your companies had excess coverage. How do you justify getting all of your money back instead of having to share with fire? Okay. First off, we're not asking for all of our money back. We agreed that all the attorney's fees that were incurred before our policy exhausted, that's ours. We pay those. Number two, we had $500,000 in policy limits for the 8384 policy. We own that. We pay that. And in fact, if you look at the original indemnity was about 2.4 or the total indemnity was about $2.4 million. We subtracted from that $500,000 representing the policy limit of 500,000 that Trinity had for the 8384 policy. Now, getting back to, well, their argument is if they have to pay, then they want to be able to subrogate against all the primary carriers. That would be great, but it's not the law. Because if they can subrogate against the primary carriers, then they're being able to do something the insured can't do. The insured is told in Garcia and in Lennar v. Markell. Well, why isn't your liability exactly the same as theirs if you've got the extent of that coverage? Well, first of all, if they've got $5 million in coverage, we've got $500,000 in coverage. Second, our liability terminated once our policy limits were exhausted. Our duty to defend ended as well as our duty to indemnify. And then it goes up to the U.S. fire layer at that point in time, according to Lennar and to Garcia. I agree with that, but why did you have to share that part of it with them? Okay, I may not completely understand the question. If the question is why did we continue to defend and continue to pay, the reason is— Before you get to the limits of your coverage, you both have the same coverage. Now, why, when you've spent your money, they aren't entitled to share with you? Or why aren't you entitled to share? How do you wind up with all of your money back? We don't. I mean, where you had coverage. Well, we have never asked for all of our money back, and we're not asking for all of our money back here. We're agreeing that the $500,000 that we had of our policy limits for 83-84, we pay for that. We're also agreeing that all the defense costs that occurred prior to the time that the Trinity policy exhausted, that's ours as well, on top of the $500,000. It's only after our policy exhausted that under their policy terms, under our policy terms, our obligations ceased and the obligations then were picked up by U.S. Fire. Well, I'm not talking about anything you were just obligated to. I'm talking about whatever you paid out. How are you getting it back in this lawsuit? Well, we would be entitled to be subjugated to what our insured LSG had, their rights. And basically, again, when LSG was making demands upon U.S. Fire to defend and to come in and identify, for about 17 years, they've done nothing. And so rather than let our insured be left where they had no defense or no indemnity, Trinity did continue with it. But they should have been paid. Well, after 2000, Trinity had paid its policy limits. It paid its $500,000 for the policy here that was selected by the insured, and our limits had been exhausted. And under most GEO policies, once your limits have been exhausted, then there's no duty to defend, there's no duty to identify. We stayed in there trying to do the right thing for the insured because U.S. Fire refused to step into the picture. And as a result, Trinity and LSG were both suing U.S. Fire for U.S. Fire's failure to honor the obligations they made under the terms of the policy. And that's it for you. Mr. Cooper, you've done a good job that every time that I'm trying to ask you about whether there's a fact issue on your defense, you point out some other reason that they haven't met their exclusion. So we still haven't talked about whether there's a fact issue on your defense, your exception. Okay. And what result – what do we do with the case if we were to decide that? Well, I think there could be a fact issue, Judge. But there would only be a fact issue if the court determined that they had made or met their burden initially to show the application of the exclusion. Right. If they haven't done that, then we never get – Right, and you've argued that they haven't, and you've argued that about four different ways. Right, right. But if you assume they have, if you make that assertion that they have met their burden of initially showing the applicability of the pollution exclusion, then I believe there would be a fact issue. And then what happens? We go back. You go back to the district court for you to establish – The sudden and accidental. The sudden and accidental. Right. And we hold everything else – none of the money, the other fees and things can be defined? Well, again, that would be on the duty to indemnify, perhaps not for the duty to defend because the duty to defend is determined by the eight quarters, which are the four quarters of the pleas, the four quarters of the petitions. Is there enough that you've raised a fact issue? Is it enough? Have you raised a fact issue? I believe we have. What do you have? Again, we're talking about how the way that the gaskets would release, the fibers would be when they were broken, when they were torn. Because otherwise, if they're in their initial form, they would not release the asbestos fibers. Only when they're broken, when they're torn, if they're cracked, then you would have the release issue. What do we read to determine that? I believe – and I think maybe I'd have to check to see if Mark's going to talk about that. But I can look and I can get forward with it. Thank you. Thank you. Thank you. May it please the Court. I'd first like to talk about the burdens on the pollution exclusion. So, really? Trinity is in here saying these cases do not arise out of the release of asbestos. That's what the whole case is about. The record is replete with the petitions, with the descriptions by Judge Folsom and by the special master to which those parts of. Nobody objected that these cases had to do with asbestos inhalation. The asbestos obviously has to be released before it's inhaled. This Court held in the Nautilus case that we have cited that even if carbon dioxide is trapped in an apartment and doesn't get outside, that's still a release. Release into the atmosphere. I actually looked up what the atmosphere is. It's been a little long since science. The atmosphere starts at ground level. There are various names for all the layers of the atmosphere past the stratosphere to the exosphere, but it starts at the surface of the earth. So, release into the atmosphere is release into the air that we all breathe. It's had to be released for these people to have breathed it. The sudden and accidental, I don't recall the evidence at all put into the record about breaking or tearing. But you know what? It has to be both sudden and accidental. So if they intentionally tore or cut a gasket to make it fit something, which is perfectly normal, it's not accidental. They did that on purpose. So I don't think they're going to have any way to establish and have not established a fact issue. This stuff about industry interpretation of the policy exclusion and the ISO. The Texas Supreme Court threw all of that out in the CBI versus National Union case in which it held the pollution exclusion is unambiguous, and we are not going to look at what everybody says they thought it meant. We're going to look at the document and look at the exclusion that's in this policy. And I wanted to say in our reply brief at page 28 is where we list the cases from around the country that have said asbestos is obviously a pollutant, and that's the way most of them say it is. It's obviously a pollutant. We've only cited three there, but if you want a 50-state survey, we'll be happy to give that to the court. I heard Mr. Cooper say, you know, every time you breathe this stuff, you're injured. We put in expert testimony to the contrary. It's at Record 1920-27 where our expert said it's the long-term exposure that causes the injury. Not everyone who breathes in some asbestos is injured. That's why this court and I am not sick because living in big cities, we have breathed asbestos all of our lives from brakes, from buildings, from all sorts of things. There's a certain level you can breathe and not get sick. These people who are in the chart that the special master put together, some of them, 1983 was the last one of their working years. Some of it, it's the middle of their working life. Some had barely started. And so there's no way to tell that this particular asbestos they might have breathed was a problem. In fact, the Continental Casualty case out of New York that we cite on page 36 of our brief talks about a study where people who are in the business of applying asbestos don't get sick until they've been in that business for at least 10 years. And that's people that are handling it every day. Now, you know, I think that I'm not sure if the court has any other questions. The pollution exclusion, I believe, is the way to go. It's clear. It's unambiguous. I think you could render judgment on it. At worst, I think you could remand in case they believe they've created a fact issue on the sudden and accidental exclusion. And unless the court has other questions, I'll let this week's session come to an end. And thank you very much for coming to Houston. Very back. Judge Graves. Thank you very much. We have your argument. The case is submitted. And the court will stand adjourned pursuant to the usual order.